IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO

IN RE:

PEDRO M. VAN RHYN SOLER

 Debtor(s)

------------------------------

MULTINATIONAL LIFE INSURANCE COMPANY

 Plaintiff

  V.

PEDRO M. VAN RHYN SOLER

 Defendant

CASE NO. 14-10211 (MCF)

Chapter 7

ADVERSARY CASE: 17-00270 (MCF)

## OPINION AND ORDER

For a second time, the Plaintiff, Multinational Life Insurance Company, challenges Defendant, Pedro Van Rhyn's, discharge order. Its previous attempt, a complaint objecting to the discharge, was unsuccessful, and dismissed as late. Now, in an eleventh-hour attempt to prevail, it seeks to revoke the discharge order.

The Plaintiff argues that the Defendant's discharge should be revoked because he obtained it through fraud by acquiring property of the estate and failing to report it to the trustee. On the other hand, the Defendant counters that the Plaintiff had knowledge of all alleged underlying facts prior to the bankruptcy petition and to entry of the discharge order; and thus, the discharge order may not be revoked.

After reviewing the two cross motions for summary judgment and hearing the parties' arguments, the court grants the

1

Defendant's summary judgment motion and denies the Plaintiff's summary judgment motion. The court agrees that the Plaintiff had knowledge of the Defendant's actions prior to the entry of the discharge order.  As such, it is estopped from revoking the discharge. The Plaintiff was late again in pursuing its remedies and therefore, cannot prevail now.

In the instant case, a review of the  undisputed facts, procedural history and case law show that the Plaintiff is not entitled to the extraordinary remedy of revoking the Defendant's discharge.

## I.    UNDISPUTED FACTS AND PROCEDURAL HISTORY

We find it necessary to meticulously recount the undisputed facts and the relevant procedural history of the legal and adversary cases:

1. Between 2004 and 2012, the Defendant and his brother, Edgardo Van Rhyn, were co-owners of Option Health Care Network, Inc. Exhibit I Docket No. 128-1, at 1-2.

2. Option was a third-party administrator of National Life Insurance Company (NALIC). Exhibit III Docket No. 127-1, at 7.

3. On or about April 2006, Option signed a service agreement contract with NALIC. Exhibit I Docket No. 128-1, at 3.

4. In 2012, the Plaintiff purchased NALIC.

5. After conducting an internal audit of the company, the Plaintiff became aware that Option officials including the Defendant detoured sums of monies from Option accounts to

2

personal bank accounts for the years 2006 to 2011. Transactions from corporate accounts to personal accounts resulted in payments to themselves and cash withdrawals. EXHIBIT III of Docket No. 127-1 at 6-9.

6. On March 5, 2012, the Plaintiff filed before the local court the case Multinational Life Insurance Company v. Option Health Care Network Inc., Pedro Van Rhyn, et al., Case No. KAC 2012-0212, to collect monies, pierce the corporate veil, damages, and breach of obligations for the Defendant's actions as president and owner of Option.

7. On August 1, 2012, the Plaintiff alerted the Federal Bureau of Investigation (FBI) through its attorney, Erik Rosado, Esq., of a scheme perpetrated by the Defendant and his brother through Option. It shared information with federal agents regarding bank account transactions, bank account logs, and company information belonging to the Defendant and his brother, where they suspected the governmental funds were being funneled to personal bank accounts. Exhibit I of Docket No. 127-1 at 1-3.

8. On February 8, 2013, the Plaintiff through its Director-Auditor, Guillermo Somoza, Esq., and its attorney, Erik Rosado, Esq., voluntarily provided the Internal Revenue Services (IRS) with information regarding a possible fraudulent scheme that they encountered while auditing the Plaintiff's purchase from NALIC. The scheme stemmed from transfer of corporate funds to personal accounts by Option officials resulting in cash withdrawals. EXHIBITS XI & XII, Docket No. 127-1 at 54-58.

9. On November 4, 2013, Erik Rosado was interviewed at the

3

Internal Revenue Office in San Juan, Puerto Rico, by the FBI and IRS Special Agents. He communicated to the authorities that the Plaintiff had knowledge that the Defendant was using funds from Option to pay a personal credit card. He stated that this credit card was used to conduct numerous personal transactions which included the purchase of jet fuel, clothing, and gifts to employees of Option. Exhibit II of Docket No. 127-1 at 5.

10. On December 13, 2014, the Defendant filed for bankruptcy under Chapter 7 of the Bankruptcy Code. Case No. 14-10211 at Docket No. 1.

11. On the following day, the deadline to object to the discharge was set to March 16, 2015. Case No. 14-10211, Docket No. 5.

13. The Clerk notified these deadlines to the creditors and parties in interest, including the Plaintiff. Case No. 14-10211 at Docket No. 9.

14. On March 3, 2015, the United States trustee requested an extension of time to file a motion to dismiss or an objection to discharge. Case No. 14-10211 at Docket No. 31.

15. The next day, the bankruptcy court granted until June 15, 2015, to file a motion to dismiss or an objection to discharge. Case No. 14-10211 at Docket No. 32.

16. On March 23, 2015, the Plaintiff filed a notice of appearance and a motion requesting an extension of time to object to the discharge. Case No. 14-10211 at Docket Nos. 43-44.

4

17. On March 24, 2015, the bankruptcy court denied the Plaintiff's motion seeking an extension of time to file an objection to discharge for failure to comply with PR LBR 9013(c), which requires initial motions to include notice language. Case No. 14-10211 at Docket No. 45.

18. On March 30, 2015, the Plaintiff refiled an extension of time to object to the discharge. Case No. 14-10211 at Docket No. 53.

19. The next day the bankruptcy court once again denied the Plaintiff's extension for failure to comply with PR LBR 9013(c). Case No. 14-10211 at Docket No. 54.

20. Fifteen days later, a new counsel appeared on behalf of the Plaintiff. Case No. 14-10211 at Docket No. 56.

21. On that same day, the Plaintiff filed Proof of Claim No. 17 in the amount of thirteen million dollars ($13,000,000.00). The claim stems from the Plaintiff's allegations in the case of Multinational Life Insurance Company v. Option Health Care Network Inc. Pedro Van Rhyn, et al., Case No. KAC 2012-0212.

22. A month later, on July 16, 2015, the Plaintiff filed an adversary proceeding against the Defendant to object to his discharge. Adversary Proceeding No. 15-00181.

23. On August 11, 2015, the Defendant filed a motion to dismiss, alleging that the complaint was filed after the deadline to file objections to discharge. Adversary Proceeding No. 15-00181 at Docket No. 11.

5

24. On October 14, 2015, the Plaintiff opposed the dismissal motion. Adversary Proceeding No. 15-00181 at Docket No. 25.

25. On February 6, 2016, while the motion to dismiss was pending before the court, the Plaintiff filed a motion for leave to file an amended complaint, alleging that it discovered new facts, new corporations, and undisclosed facts that are essential to the causes of action. Adversary Proceeding No. 15-00181 at Docket No. 40. The amended complaint was filed simultaneously with the motion requesting leave. Id. at Docket No. 41.

26. On March 10, 2016, the court dismissed the objection to the discharge action for failure to file the adversary complaint within the statutory deadline for objecting to the discharge. Adversary Proceeding No. 15-00181 at Docket No. 47.

27. On October 12, 2016, the Defendant was granted a discharge order, pursuant to 11 U.S.C. § 727. Case No. 14-10211 at Docket No. 136.

28. Six weeks later, the Defendant was indicted by the U.S. Department of Justice at the United States District Court for the District of Puerto Rico. Criminal Case No. 16-742-ADC.

29. On September 27, 2017, the United States Bankruptcy Court for the District of Puerto Rico issued General Order #17-05 extending all periods set by statutes of limitations applicable to causes of action, cases, and proceedings, filed or to be filed in the Court, until November 6, 2017, after the passing of Hurricane Maria through Puerto Rico.

30. On November 6, 2017, the Plaintiff filed the instant complaint for revocation of discharge order, alleging that the Defendant obtained the discharge through fraud and on grounds, pursuant to 11 U.S.C. § 727(d)(1)-(d)(2) and Fed. R, Bankr. P. 7001(4). Adversary Proceeding No. 17-00270 at Docket No. 1.

31. On February 14, 2019, the Defendant and the U.S. Attorney filed a Plea Agreement in the criminal case no. 19-111, in which the Defendant pled guilty of conspiracy to defraud against the United States under 18 U.S.C. § 371. Adversary Proceeding No. 17-00270 at Docket No. 128-1, Exhibit III at 14-27.

32. In the Plea Agreement, the Defendant stipulated as fact that the purpose of the scheme was for him and his brother to enrich themselves by not revealing to the Commonwealth of Puerto Rico income in the amount of $181,337.39, and the non-payment of taxes on personal expenses charged to Option's AMEX credit card in the years 2010, 2011, and 2012. The Defendant and his brother knowingly concealed, and disguised personal expenses paid with the company's AMEX. Adversary Proceeding No. 17-00270 at Docket No. 128-1, Exhibit III at 25.

33. A month after the plea agreement, on March 13, 2019, the Defendant filed an Amended Statement of Financial Affairs. Bankruptcy Case No. 14-10211 at Docket No. 180.

34. On July 29, 2019, the Defendant filed a motion submitting the amended tax returns for tax years 2010, 2011, and 2012, containing an aggregate unpaid tax debt of $28,804.00 in

7

income. Adv. Proc. No. 17-00270 at Docket No. 75.

35. On November 17, 2020, the legal and adversary cases were reassigned to the undersigned judge. Adversary Proceeding No. 17-00270 at Docket No. 125.

## II. LEGAL STANDARD

Summary judgment is available if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010).

When both parties move for summary judgment, each party must carry its own burden of proof as the moving party in its cross motions and as the nonmoving party in response to the other party's motion. Wells Real Estate Inv. Trust II, Inc., 615 F.3d 45, 51 (1st Cir. 2010). If there are no disputed material facts, only one party is entitled to judgment as a matter of law. Encanto Rests., Inc. v. Aquino Vidal (In re Cousins Int'l Food Corp.), 553 B.R. 197, 205 (Bankr. D.P.R. 2016).

This matter is appropriate for summary judgment disposition as there are no material facts in dispute and it is a matter of law. In re Colarusso, 382 F.3d 51 (1st Cir. 2004) (citing Celotex, 477 U.S. at 322-323); Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

## III. PARTIES' CONTENTIONS

The Plaintiff seeks to revoke the discharge order under

8

section 727(d)(1) or (d)(2) of the Bankruptcy Code.[1] The Plaintiff states that the discharge was obtained through fraud and that it did not know of the fraud until after the entry of the discharge order; therefore, the discharge order must be revoked under § 727(d)(1). The Plaintiff also argues that the discharge may be revoked because the Defendant failed to report the acquisition of or entitlement of property to the chapter 7 trustee under § 727(d)(2).

The Defendant, on the other hand, claims that the Plaintiff is not entitled to revoke the discharge under § 727(d)(1) because it knew of the Defendant's activities prior to the entry of discharge. The Defendant contends that revocation of the discharge under § 727(d)(2) is not warranted because the Plaintiff has failed to specify the property of the estate, which the Defendant allegedly failed to report fraudulently in the bankruptcy schedules.

## IV. LEGAL ANALYSIS

The Plaintiff's summary judgment cannot be granted under either § 727(d)(1) or § 727(d)(2). Under § 727(d)(1), the Plaintiff cannot convince the court to revoke the discharge order when it had pre-discharge knowledge of the facts that led to the Defendant's indictment. Furthermore, the eventual guilty plea deal that occurred two years after the entry of discharge cannot be raised to revoke the discharge. It is undisputed that the Plaintiff had knowledge of the Defendant's fraudulent actions at least two years prior to the filing of the bankruptcy petition. The Plaintiff bases his complaint on a federal indictment of the Defendant that was filed one month after the entry of the

---

[1] Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101-1532.

discharge. This indictment was the result of the Plaintiff's cooperation with federal authorities. The court notes that this revocation of discharge action appears to be a collateral attack on the ruling dismissing its previous complaint objecting to the discharge.

Under § 727(d)(2), the Plaintiff is unable to revoke the discharge order because there was no property to be hidden or delivered to the trustee and even if there was such hidden property, pre-discharge knowledge of the Defendant's wrongdoing bars the Plaintiff from prevailing in the instant action. We address these points.

A. Section 727(d)(1)

Section 727(d)(1) states that the court shall revoke a discharge if "such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge." 11 U.S.C. § 727(d)(1). The time to bring a revocation for fraud is limited to one-year. Section 727(e)(1) states that "a creditor … may request a revocation of discharge - (1) under subsection (d)(1) of this section within one year after such discharge is granted." "Revocation of a discharge is an extraordinary remedy, which should be construed liberally in favor of the debtor." In re Green, 2014 WL 3953470 at *6 (B.A.P. 1st Cir. August 6, 2014).

> To prevail under Section 727(d)(1), the Plaintiff must establish by a preponderance of the evidence that: (1) the debtor obtained the discharge through fraud; (2) the creditor possessed no knowledge of the debtor's fraud prior to the granting of the discharge; and (3) the fraud, if known, would have resulted in the denial of the discharge under section 727(a) of the Bankruptcy Code. As for the first element, the plaintiff must demonstrate that the debtor committed actual fraud involving an intentional wrong, such as the intentional omission of assets from the debtor's schedules. The third element also incorporates a standard of actual

> fraud, such that a court would have denied a debtor's discharge under section 727(a) of the Bankruptcy Code had the fraud been known. In this way, the third element subsumes the first to the extent that an analysis of the third element inherently requires the same analysis of whether the debtor committed fraud in fact.

Multinational v. Van Rhyn, Adv. Proc. 17-00270, Docket No. 86 at 4 (Bankr. D.P.R., Oct. 31, 2019)(citing Yules v. Gillis (In re Gillis), 403 B.R. 137, 144 (B.A.P. 1st Cir. 2009)).

The present revocation action fails for two reasons. First, the Plaintiff became aware of the Defendant's fraudulent activities two years before the filing of the bankruptcy petition. The Defendant shared this knowledge with the federal authorities in 2012, prior to the bankruptcy filing, and the result was that the Defendant's 2016 indictment and eventual conviction in 2019 after he entered into a guilty plea agreement. Second, the knowledge of the guilty plea agreement did not occur within the 1-year period after entry of discharge. Because we find that the Plaintiff does not comply with the second prong of section 727(d)(1) regarding lack of knowledge, the court centers its attention on this factor and will not discuss the merits of the remaining prongs.

### i. Pre-discharge Knowledge

The Defendant filed for bankruptcy in 2014. Two years before, in 2012, the Plaintiff purchased NALIC, and after conducting an internal audit of the company it became aware that the Defendant detoured sums of monies from Option to personal bank accounts for the years 2006 to 2011. These transactions constituted payments and cash withdrawals from corporate accounts to personal accounts. The Plaintiff alerted the FBI of the scheme perpetrated by the Defendant and shared information with federal agents.

In 2013, the Plaintiff also contacted the IRS and provided it information about the Defendant funneling monies from corporate

11

accounts to his personal accounts. Several months later, the Plaintiff's attorney was interviewed by the FBI and IRS Special Agents. He again communicated to these authorities that the Defendant was using funds from Option to pay a personal credit card. He further stated that this credit card was used to conduct numerous personal transactions which included the purchase of jet fuel, clothing, and gifts to employees of Option. A year after the interview, the Defendant filed for chapter 7.

Exhibits I, II, III, V, VI, X, XI & XII of the Defendant's motion for summary judgment demonstrate that the Plaintiff was aware of the Defendant's use of the corporate credit card for personal expenses and transfer of corporate funds to personal bank accounts, two years prior to the filing of the bankruptcy case. As stated above, the Plaintiff reported it to the federal authorities in 2012. Two years later, the Plaintiff learned during the discovery process in the local court case that Option's corporate Amex credit card was being used for personal expenses by the Defendant. These fraudulent activities resulted in guilty plea agreement in 2019. Thus, the Plaintiff was aware of the Defendant's fraudulent activities before the bankruptcy petition was filed.

ii. Untimely Objection to Discharge Complaint

The Plaintiff filed an untimely objection to the discharge based on the fraudulent activities discovered in the audit. The deadline to file an objection to discharge was March 16, 2015. The Clerk's Office notified this deadline to the Plaintiff along with the other creditors in the case. The court extended the deadline to June 15, 2015, per the request of the U.S. trustee. The Plaintiff filed the complaint eight days after the extended deadline afforded to the U.S. trustee expired.

The Plaintiff then requested leave to file an amended complaint after it discovered new facts, new corporations, and undisclosed facts that it described as essential to the causes of

action it was pursuing. The amended complaint described the alleged scheme perpetrated by the Defendant to conceal his assets. The bankruptcy court dismissed the action because it was filed after the deadline to object to discharge expired. In the dismissal order, the bankruptcy court reasoned that the Plaintiff failed to make an assertion that its knowledge of the facts giving rise to the alleged fraud were formed between the day that the deadline to file an objection to discharge expired and the day when it filed its complaint.

### iii. Post-Discharge Knowledge

Because the Plaintiff did not timely raise its objection to the discharge, it now seeks to revoke the discharge order as a collateral attack with the present adversary proceeding. The Defendant's discharge was entered on October 12, 2016, pursuant to 11 U.S.C. § 727. For purposes of 11 U.S.C. § 727(d)(1), the Plaintiff can only use knowledge of fraud that came to its attention from October 12, 2016 until October 12, 2017. We note that the court extended deadlines for filing causes of action until November 6, 2017, upon the passing of Hurricane Maria, pursuant to General Order #17-05. Due to the one year after the discharge statutory requirement, the Plaintiff is barred from using evidence or knowledge obtained after November 6, 2017.

Within the 1-year period after the entry of the discharge order, the Plaintiff learned that the Defendant was indicted by the U.S. Department of Justice. The federal indictment contained one count of health care fraud and two counts of money laundering. The Defendant was the President of Option, the corporation that acted as the third-party administrator of Plaintiff's predecessor, NALIC. According to the prosecuting authorities, "the scheme and artifice to defraud" employed by the Defendant was to incur in large amounts of personal and non-business related expenditures on Option's corporate credit card and misused funds received from the

Puerto Rico Treasury Department for healthcare expenses, resulting in the Plaintiff (Multinational Life Insurance Company) having to pay more than $4,000,000 to healthcare providers with outstanding debts owed by Option as a result of the fraudulent scheme. The court is of the view that the underlying facts contained in the indictment were not new to the Plaintiff because it alerted the federal authorities of the criminal activities and cooperated with the investigation two years before the filing of bankruptcy petition.

  iv. <u>Post-Revocation Complaint</u>

After filing the adversary action to revoke the discharge order, the Plaintiff contends that the Defendant plead guilty for defrauding the Puerto Rico Treasury Department and that he filed an Amended Statement of Financial Affairs.  The Plaintiff argues that the original Statement of Financial Affairs knowingly contains inaccurate information. Based on these fraudulent actions, the Plaintiff claims that the discharge order should be revoked under § 727(d)(1). The court observes that the Defendant's guilty plea and the amendment to the Statement of Financial Affairs occurred in 2019. Both events occurred two years after the entry of the discharge order. The Plaintiff cannot use the plea agreement or the Amended Statement of Financial Affairs for revocation purposes because they do not fall within the one-year after entry of discharge period. The Code expressly mandates the revocation action must be brought within the year of the entry of discharge. Plaintiff is barred from revoking the discharge by using events that occurred two years after the entry of discharge. Although the complaint was technically filed timely, the Plaintiff acquired knowledge of the plea agreement and the Amended Statement of Financial Affairs outside the statutory period required for a revocation.

For a revocation of discharge for fraud to prosper under

section 727(d)(1) of the Bankruptcy Code, knowledge must be acquired within one year after the entry of the discharge order. Clearly, the Plaintiff knew of the fraud, prior to the granting of discharge in 2016 and as a matter of fact, knew about the fraud two years prior to the filing of the petition in 2012.

The Plaintiff fails to raise any new facts of fraud that occurred between the entry of discharge order in 2016 and one year thereafter in 2017. All the factual allegations for fraud stem from the 2012 audit and the local court litigation, that occurred two years before the filing of the bankruptcy case. These underlying allegations of fraud resulted in a criminal conviction and an Amended Statement of Financial Affairs in 2019, two years after the entry of discharge. Therefore, the Plaintiff is prevented from pursuing its revocation of discharge under § 727(d)(1).

B. Section 727(d)(2)

The Plaintiff asserts that the discharge should also be revoked under section 727(d)(2) of the Bankruptcy Code. This section lists as a ground for revocation of a discharge that "the debtor acquired property that is property of the estate or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to the property, or to deliver or surrender the property to the trustee." 11 U.S.C. § 727(d)(2). The Plaintiff claims that the Defendant acknowledged through his Plea Agreement that, during years 2010, 2011 and 2012, the Defendant participated in a conspiracy to enrich himself by not revealing income of $181,337.39 and the non-payment of taxes on personal expenses charged to Option. It prompts the court to consider that the Debtor amended his tax returns to reflect this fact. The Plaintiff also alleges that the fact that the Defendant amended his Statement of Financial Affairs to indicate an increase in income for the years

15

2010, 2011, 2012, as a result of the plea agreement, constitutes an acquisition of property of the estate. Quite to the contrary.

The court examined the Amended Statement of Financial Affairs and the amended tax returns; but it does not find anything in them to suggest that there is property acquired by the bankruptcy estate. Rather, the court is of the view that the amended tax returns are a result of overstated expenditures on the part of the Defendant and do not result in the acquisition of property available to the trustee for the benefit of the bankruptcy estate. The monies that the Defendant spent with the corporate American express were never available as "property of the estate" because they were expended by the Defendant long before the bankruptcy petition was filed in 2014. Given that there was no property to be hidden or delivered to the trustee, § 727(d)(2) does not apply to our set of facts and may not be a basis to revoke the discharge.

Even if the Plaintiff had identified a property that the Defendant failed to report, it already knew of the situation prior to the entry of the discharge order from the 2012 audit. As stated above, the Plaintiff had filed a belated objection to discharge, claiming the following in the allegations of the previous complaint:

1) "[u]pon information and belief, the defendant also failed to list all of his assets and or property of the estate in the schedules and amendments to the schedules filed in the Chapter 7 case which constitutes a ground for the denial of a discharge under section 727(a)(2) of the Bankruptcy Code." Adversary Proceeding No. 15-00181 at Docket No. 1, at 4, ¶6.

2) "[u]pon information and belief, even though the defendant has filed multiple amendments to his schedules and participated in 341 meetings, these are incomplete disclosures that do not conform with [section] 727(a)(3)

16

and (a)(5)." Id. at 7, ¶19.

    3) "[o]mitting an asset from the debtor's schedules may be a "concealment" within the meaning of the discharge exception if it is both fraudulent and material." Id. at 9, ¶28.

The prior complaint establishes that the Plaintiff knew about an alleged failure by the Defendant to set forth his assets or liabilities, years before the bankruptcy.

Several bankruptcy courts have held that under § 727(d)(2) a party's pre-discharge knowledge of a debtor's wrongdoing under this section will effectively estop that party from seeking revocation of the discharge. 6 Collier on Bankruptcy ¶ 727.17 (16th 2021)(citing Canfield v. Lyons, Jr. (In re Lyons, Jr.), 23 B.R. 123, 126 (Bankr. E.D. Va. 1982)("The fact that subparagraphs 727(d)(2) and (d)(3) contain no language requiring the knowledge of any fraudulent conduct to be received after the discharge is granted, does not give the party in interest, who has the knowledge of the probable wrongdoing the privilege to wait until after a discharge is granted to ask the court to revoke the discharge.")). The Debtor's duty under § 727(d)(2) is to report to the trustee any acquisitions of property after the filing of the petition. Id.

We have already ruled that the Plaintiff had pre-discharge knowledge of the Debtor's wrongdoing and as such it is barred from seeking the revocation of the discharge. Moreover, the Plaintiff's proffers defeat his plea for revocation, given that the property of the estate that it alleges that the Defendant acquired occurred prior to the filing of the bankruptcy petition. According to Collier on Bankruptcy, § 727(d)(2) appears to apply only to property acquired during the bankruptcy case. 6 Collier on Bankruptcy ¶ 727.17 (16th 2021). Other bankruptcy courts have similarly held that the revocation under § 727(d)(2) should be for post-petition conduct. Hurston v. Anzo (In re Anzo), 2017 Bankr. LEXIS 259 *10 (Bankr. N.D. Ga. Jan. 30, 2017)("only post-petition

17

conduct in connection with the Debtor's bankruptcy case is relevant and this Court finds that this applies to Section 727(d)(2), as well").  See All Points Capital Corp. v. Stancil (In re Stancil), 2012 Bankr. LEXIS 4323 *6 (Bankr. E.D.N.C. Sept. 18, 2012)("under § 727(d)(2), a debtor's discharge may be revoked when a debtor engages in certain types of fraud in connection with his own bankruptcy case"). Hence, the revocation of discharge under §727(d)(2) does not prevail. While we do not condone the Defendant's pre-bankruptcy criminal conduct, the court is unable to revoke the discharge under § 727(d)(1) or (d)(2).

**CONCLUSION**

For the foregoing reasons, the Plaintiff's summary judgment is denied, and summary judgment is granted in favor of the Defendant.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 17th day of November, 2021.

Mildred Caban Flores
U.S. Bankruptcy Judge